BAILEY, Judge,
concurring in part and dissenting in part.
I concur in part and dissent in part. In concluding that Gilliland was timely prosecuted, the majority describes Gilliland’s “positive act of concealment calculated to prevent discovery of the fact that a crime had been committed” as “remaining silent when he had a legal duty to speak.” Op. at 1059. I believe that, if Gilliland lied to officers on November 21, 2008, he committed a positive act, concealing Ashcraft’s crime and thus his own offense of failure to report.[16] However, I disagree with the majority opinion to the extent that it suggests concealment might arise from remaining silent about one’s own crime, without more.
The majority reasoning effectively converts the legislatively-enacted two-year statute of limitations applicable to misdemeanor offenses into a non-existent provision where the misdemeanor offense is one of silence. It is not possible to discern the silence constituting the underlying offense from the silence covering the offense.
I must first observe that silence does not constitute overt efforts by Gilliland to avoid his own apprehension, the ordinary and usual objective of the tolling provision. Also, I find it logically untenable that an individual charged with a crime of silence has “concealed” his own crime by continuing his silence. Finally, penalizing an individual for maintaining silence of one’s own crime would have Constitutional implications.
Appellate courts must “avoid invading the province of the legislature” and will strictly interpret the language of Indiana Code section 35 — 41—4—2(h)(2), even if the result is that tolling could continue indefinitely, “a result that seems at odds with the purposes underlying statutes of limitations.” Sloan v. State, 947 N.E.2d 917, 923 (Ind.2011). Nonetheless, “public policy and a strict reading of the statute favor the prosecution of alleged crimes over the protection of defendants who have intimidated victims or otherwise concealed evidence.” Id.
“Courts will still need to determine whether concealment exists in the first place. But once concealment is established, the statute of limitations ceases to run until authorities know or should have known sufficient evidence to charge the person with the crime. Id. The tolling statute uses the language “conceals evidence of the offense;” thus, it is arguable that the language of the last statutory revision applies to concealment of any evidence, including evidence of guilt, and thus would toll the statute of limitations in any crime in which a defendant tries to avoid apprehension.” Id. at 922, n. 8.
Indiana Code section 35 — 41—4—2(h)(2) provides that “the period within which a prosecution must be commenced does not *1065 include any period in which: ... the accused person conceals evidence of the offense, and evidence sufficient to charge the person with that offense is unknown to the prosecuting authority[.]” In other words, the tolling statute is directed toward a person’s concealment of his own crime, not another person’s crime. For example, in Sloan, the accused tolled the statute of limitations by intimidating his victim through threats of jail. 947 N.E.2d at 921. See also Crider v. State, 531 N.E.2d 1151, 1154 (Ind.1988) (defendant had committed positive acts of intimidation that amounted to concealment). I cannot interpret Gilli-land’s continued silence to be an attempt to avoid his own apprehension for his earlier silence. If he lied in 2008 and knowingly covered for the crime of another, a False Reporting or Obstruction of Justice charge may have been in order.
Additionally, it would be extremely problematic to determine at what point silence becomes not merely silence that is criminalized as failure to report but silence that is “concealing” silence. Indiana Code section 31-33-5-1, the statute that imposes the general duty to report child abuse, provides that “an individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report as required by this article,” and Indiana Code section 31-33-5-4 prescribes that the report must be made “immediately.” Thus, one who does not “immediately” report in accordance with the general reports ing statute has committed an offense of omission at the time he acquires reason to believe the abuse or neglect exists.
Here, silence is an element of the charged offenses; at what point would sustained silence evolve into separate conduct? Does the failure to speak become “concealment” one moment, one day, one year after the individual first kept silent in the face of “reason to believe” abuse or neglect occurred? Moreover, once the individual possessing such “reason to believe” has remained silent, he has committed a crime and there are constitutional implications. He is entitled, under the Fifth Amendment to the United States Constitution, to avoid self-incrimination and remain silent regarding his earlier omission without fear of reprisal.
For these reasons, I cannot agree that mere silence becomes “concealment.” However, if Gilliland lied to police, such could constitute concealment.
Nor am I persuaded that the failure to report is a continuing offense such that no statute of limitations applies. Even violent crimes, not including murder, are subject to statutes of limitations; this is a misdemeanor offense to which the misdemeanor statute of limitations should apply. Otherwise, the State — at the unfettered discretion of the prosecutor — may take a heavy-handed approach to coerce evidence from individuals who did not commit affirmative acts of abuse or neglect but may have misconstrued the actions of others. The threat of prosecution could be looming over the head of a non-reporting person years after those who commit affirmative acts are afforded relief by statutes of limitations.
In my view, the trial court properly denied Gilliland’s motion to dismiss while concluding that concealment did not occur until the affirmative statement of November 21, 2008. Thus, I agree with the majority’s decision to affirm the trial court’s denial of the motion to dismiss the charging information, but I dissent from the instruction that the State need not amend the information. I agree that the State alleged facts sufficient to constitute the charged offenses.

. If Gilliland knowingly gave false information relative to Ashcraft’s crime, he may have committed Obstruction of Justice, Indiana Code § 35-44.1-2-2 (formerly 35-44-3-4), or False Reporting or Informing, Indiana Code § 35-44.1-2-3 (formerly 35-44-2-2).